```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

ROBERT G. CUNARD and
MELISSA CUNARD

      Plaintiffs,

v.                            Civil Action No. 2:06-CV-00640

MYLAN PHARMACEUTICALS, INC.,
a West Virginia corporation,
MYLAN LABORATORIES, INC.,
a West Virginia corporation, and
JOHN DOES 1 through 4,

      Defendants.


## MEMORANDUM OPINION AND ORDER


Pending is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by defendants Mylan Pharmaceuticals, Inc. and Mylan Laboratories, Inc. (hereinafter collectively referred to as "Mylan"), filed October 10, 2006. Also before the court is the motion of the same defendants, filed on October 26, 2006, to stay discovery pending the court's ruling on the motion to dismiss. The motion to stay is ORDERED denied in view of the within ruling on the motion to dismiss.

1

I.

Mylan develops, manufactures and markets generic pharmaceutical products. (Amended Complaint ¶ 2)(hereinafter "Am. Comp."). Plaintiff Robert G. Cunard served as a former senior executive officer of Mylan from August 1999 through May 5, 2006. (Id. ¶ 5). Upon his departure, Cunard was Mylan's Senior Vice-President for Marketing and Strategic Development. (Id.)

Glades Pharmaceuticals, LLC ("Glades"), develops, manufactures, and markets generic dermatological products for the care and treatment of skin conditions and disorders. (Id. ¶ 6). During February and March 2006, Cunard discussed with Glades the possibility of his going to work for Glades. (Id. ¶ 7). Subsequently, Glades offered Cunard a job as its Senior Vice President for Commercial Operations, based in Gwinnett County, Georgia, which Cunard accepted. (Id.) Cunard offered to remain with Mylan until July 9, 2006. (Id.)

During the time Cunard worked for Mylan, he routinely transmitted files from his e-mail account at work to his home computer in order to discharge his duties. (Id. ¶ 9). Cunard's last day of employment at Mylan was May 5, 2006. (Id. ¶ 10). On

May 10, 2006, Cunard began his employment with Glades. (Id. ¶ 11).

Following Cunard's departure, Mylan reviewed his electronic calendar and e-mail communications. Mylan discovered that Cunard had e-mailed Mylan files to his home computer. (Id. ¶ 12). Cunard alleges that Mylan was aware of and consented to the transmission of files from his Mylan computer to his home computer. (Id.)

On May 18, 2006, a deputy of the Monongalia County Sheriff's Department entered the Cunard family residence in Morgantown to execute a search warrant. (Id. ¶ 14). The search warrant ordered the deputy to seize all personal computers, related equipment and computer data found in the Cunard home. (Id.) The court has not been provided with a copy of the search warrant and corresponding affidavit. In addition, the pleadings do not specify what if anything was taken when the search was executed.

Cunard contends that the warrant was issued by the circuit court based on misleading information given by Mylan and the John Doe defendants. (Id. ¶ 15). Specifically, Cunard

believes Mylan advised the sheriff's department that Cunard transmitted files after beginning negotiations with Glades in an attempt to steal confidential Mylan information.  (Id. ¶ 16). After the seizure, Monongalia County authorities notified the Cunards' attorney that there was no basis for any criminal investigation of Cunard.  (Id. ¶ 19).

Plaintiffs' amended complaint alleges the following five counts against Mylan and John Doe defendants: Count I Abuse of Process, Count II Outrageous Conduct, Count III Invasion of Privacy, Count IV Malicious Prosecution, and Count V Civil Conspiracy.  On October 10, 2006, Mylan moved to dismiss the case in its entirety.

II.

A motion to dismiss pursuant to Rule 12(b)(6) should not be granted "unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief."  Greenhouse v. MCG Capital Corp., 392 F.3d 650, 655 (4th Cir. 2004) (quoting Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)).  Additionally, the "complaint

[is viewed] in the light most favorable to the plaintiff and . . . all well-pleaded allegations" are accepted as true.  South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).  Further, even beyond the facts alleged, the court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

A complaint need not "make a case" against a defendant or "forecast evidence sufficient to prove an element" of the claim.  Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005) (quoting Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).  Rather, it need only "allege facts sufficient to state elements" of the claim.  Id.; Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (noting complaint must "allege facts sufficient to state all the elements of" a claim).

As noted by the leading commentators on the Federal Rules of Civil Procedure, "the purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement

of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case."  5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (3d ed. 2004).

Count I - Abuse of Process

Plaintiffs claim Mylan's conduct warrants a finding of abuse of process.  The West Virginia Supreme Court of Appeals has explained abuse of process as follows:

> The distinctive nature of an action for abuse of
> process, as compared with the actions for malicious
> prosecution and false imprisonment, is that it lies
> for the improper use of a regularly issued process,
> <u>not for maliciously causing the process to issue</u> . . .
> The authorities are practically unanimous in holding
> that to maintain the action [for abuse of process]
> there must be proof of a willful and intentional abuse
> or misuse of the process for the accomplishment of
> some wrongful object - an intentional and willful
> perversion of it to the unlawful injury of another.

<u>Williamson v. Harden</u>, 585 S.E.2d 369, 372 (W. Va. 2003)(emphasis supplied)(quoting <u>Preiser v. MacQueen</u>, 352 S.E.2d 22, 28 (W. Va. 1985)).

Specifically, the amended complaint alleges that the process of the search warrant was caused by misrepresentations on

the part of Mylan. Further, Mylan used the search warrant to "intimidate, coerce, harass and humiliate Cunard, to retaliate against him, and to gain unfair advantage over Cunard in civil litigation." (Am. Comp. ¶ 21). Other than alleged malice in causing the process to issue, the amended complaint does not assert that Mylan took any additional action to abuse the process. The crux of the plaintiffs' contention is that Mylan cannot escape liability for the emotional harm caused to the plaintiff by an innocent actor (the sheriff's department) in carrying out the warrant.

The court acknowledges that plaintiffs' claim for abuse of process is doubtful in view of <u>Harden</u> and <u>Preiser</u>. Discovery may illuminate the inquiry, however. By example, plaintiffs are not aware of the specific actions the defendants undertook after the warrant issued. In view of this uncertainty, plaintiffs should have the opportunity to further develop their claim through discovery. Defendants' motion to dismiss Count I is denied.

Count II - Outrageous Conduct

Plaintiffs assert that defendants' actions rise to the

level of outrageous conduct.  In order for plaintiffs to prevail on a claim for intentional infliction of emotional distress, four elements must be established.

> It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Philyaw v. Eastern Associated Coal Corp., 633 S.E.2d 8, 13 (W. Va. 2006)(quoting Syl pt. 3 Travis v. Alcon Laboratories, 504 S.E.2d 419 (W. Va. 1998).

To satisfy the first element, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." Keyes v. Keyes, 392 S.E.2d 693, 696 (1990)(quoting Restatement (Second) of Torts § 46 cmt. D (1965)).  "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against that actor, and lead him to exclaim, "Outrageous!"  McCammon v. Oldaker, 516

S.E.2d 38, 46 (W. Va. 1999)(quoting Tanner v. Rite Aid of West Virginia, Inc., 461 S.E.2d 149, 157 (1995).

The role of the court, in the first instance, is to evaluate "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Restatement, § 46 cmt. h; Syl pt. 7, Love v. Georgia-Pacific Corp., 550 S.E.2d 51 (W. Va. 2001).  Thus, it is for the court to determine whether the plaintiffs' allegations are sufficient to state a claim for outrageous conduct as a matter of law.

The West Virginia Supreme Court has commented that the tort of outrageous conduct "is a difficult fact pattern to prove." Hines v. Hills Dept. Stores, Inc., 454 S.E.2d 385, 390 (W. Va. 1994).  Because that court found it so difficult to define what conduct constitutes outrageous conduct, the court observed, "we define what it is not on a case-by-case basis." Id. at 390.

The tort of outrageous conduct is heavily dependent on the facts.  The extent of Mylan's involvement in the search warrant being issued is not readily apparent nor is it clear as to what further actions were taken on the part of Mylan.  Again,

9

the plaintiffs should have an opportunity to conduct discovery. Defendants' motion to dismiss Count II is denied.

Count III - Invasion of Privacy

Plaintiffs do not challenge the validity of the search warrant or the actions of the police.  In fact, plaintiffs concede "[w]hen viewed from the prospective [sic] of the Circuit Court and the Sheriff, the warrant and execution thereof were lawful."  (Pl.s' Response at 12).  Rather, the plaintiffs assert an invasion of privacy claim because the "[d]efendants' conduct caused an . . . intrusion into plaintiffs' privacy . . . "  (Am. Comp. ¶ 27).

In West Virginia, four categories of the tort of invasion of privacy are recognized: (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public.  <u>Crump v. Beckley Newspapers</u>, 320 S.E.2d 70, 85 (W. Va. 1983)(referring to <u>Restatement (Second) of Torts</u> §§ 652A-652E (1977)).  Plaintiffs' claim falls under the first category.  (See Am. Comp. ¶ 27).

The amended complaint does not allege that Mylan or the John Doe defendants intruded into the intimacy of the plaintiffs' home and private lives; rather, it is alleged that the defendants' conduct caused the sheriff's department to obtain a search warrant and "intru[de] into plaintiffs' privacy . . . and into their papers, personal property and effects." (Am. Comp. ¶ 27). Mylan defendants assert that Mylan did not obtain the warrant, encourage the police to obtain the warrant, or provide affidavits or testimony to the judge that issued the warrant. (Def.s' Mot. to Dismiss at 9). Thus, plaintiffs would have the court impute the actions of the sheriff's department to Mylan.

The plaintiffs have cited no authority for an invasion of privacy claim when the intrusion was achieved by a "proxy" pursuant to a valid search warrant. Once the factual record is complete, the court can determine whether the law of invasion of privacy is applicable here. The defendants' motion to dismiss Count III is denied.

Count IV - Malicious Prosecution

Plaintiffs contend that the elements of malicious prosecution are met because defendants caused a criminal

11

investigation of Cunard that terminated in his favor.  (Am. Comp. ¶ 29).  Information or "misinformation" from the defendants leading to a search warrant, without more, is not malicious prosecution.  Under West Virginia law, plaintiffs must prove malicious prosecution by showing: "(1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious."  Pote v. Jarrell, 412 S.E.2d 770, 774 (W. Va. 1991).  If a plaintiff fails to prove any of these elements, he cannot recover.  (Id.)

>The court has explained:
>
>> The public policy favors prosecution for crimes and
>> requires the protection of a person who in good
>> faith and upon reasonable grounds institutes
>> proceedings upon a criminal charge. The legal
>> presumption is that every prosecution for crime is
>> founded upon probable cause and is instituted for
>> the purpose of justice.

Morton v. Chesapeake and Ohio Ry. Co., 399 S.E.2d 464, 467 (W. Va. 1990).  Due to its potential chilling effect, the tort of malicious prosecution traditionally has been disfavored. McCammon, 516 S.E.2d at 45 (internal citations omitted).

In <u>Reynolds v. Hale</u>, 855 F. Supp. 147, 152 (S.D. W. Va. 1994), the state dismissed an obstruction charge following the plaintiff's arrest. The charge in that case was not pursued beyond the criminal complaint, summons, and arrest stage. The court found that the claim for malicious prosecution must be dismissed because it (the prosecution) was not "conducted to its termination." (<u>Id.</u>)

The right to bring an action for malicious prosecution accrues upon termination of the action complained of in the trial court. <u>McCammon</u>, 516 S.E.2d at 46. "Under this rule, the termination of the action complained of in the trial court is the trial court's entry of its final order which terminates litigation between the parties and leaves nothing to be done but to enforce the execution of what has been determined." (<u>Id.</u>); <u>See</u> <u>also</u> <u>James M.B. v. Carolyn M.</u>, 456 S.E.2d 16 (1995).

Here, the plaintiffs cannot show that the prosecution was conducted to its termination. Cunard was never arrested or indicted on any charges. Even if the court were to find that a prosecution commenced upon the issuance and execution of the search warrant, the prosecution was not thereafter pursued, much less "conducted to its termination." Rather, Monongalia County

13

authorities simply decided there was no basis for any criminal investigation.  (See Am. Comp. ¶ 19).  The defendants' motion to dismiss Count IV is granted.

Count V - Civil Conspiracy

Plaintiffs claim that Mylan and the John Doe defendants conspired by their acts and omissions against Cunard.  (See Am. Comp. ¶ 32).  The West Virginia Supreme Court of Appeals has adopted the definition of civil conspiracy set forth in 15A C.J.S. Conspiracy § 1(1).  <u>Politino v. Azzon</u>, Inc., 569 S.E.2d 447, 451 (W. Va. 2002)(citing <u>Dixon v. American Industrial Leasing Company</u>, 253 S.E.2d 150, 152 (W. Va. 1979).  Pursuant to that definition, "a civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose not in itself unlawful, by unlawful means."  (Id.)

It is important to note that "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage."  <u>Cook v. Heck's, Inc.</u>, 342 S.E.2d 453, 460 (W. Va. 1986).  The amended complaint specifically alleges a conspiracy

by and among Mylan and the John Doe defendants "who, at all times material to this complaint, have been employed by or acted as agents for Mylan."  (Am. Comp. ¶ 3).  However, at this pre-discovery juncture, it is unclear what actually took place.  Further, the individual actors' roles and identities are unknown.  It would be premature at this point to definitely resolve whether the plaintiffs can satisfy the elements of civil conspiracy.  The defendants' motion to dismiss Count V is denied.

III.

Based upon the foregoing discussion, the court ORDERS as follows:

1. That defendants' motion to dismiss Counts I, II, III and V be, and hereby is, DENIED;
2. That defendants' motion to dismiss Count IV be, and hereby is, GRANTED.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: December 13, 2006

John T. Copenhaver, Jr.
United States District Judge